IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DOUGLAS KIDD,

        Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　CIVIL ACTION NO. 2:24-cv-00090

WEXFORD HEALTH SOURCES, INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are Defendants' Wexford Health Sources, Inc., Sandra May, and Josh Shrewsbury Joint Motion for Summary Judgment [ECF No. 37] and Defendants' Motion to Strike Plaintiff's Identified Expert Witnesses and Exclude Them from Testifying at Trial [ECF No. 39]. Both motions are now ripe for review. For the reasons that follow, Defendants' Motion for Summary Judgment [ECF No. 37] is **GRANTED**. Further, Defendants' Motion to Strike Plaintiff's Identified Expert Witnesses and Exclude Them from Testifying at Trial [ECF No. 39] is **DENIED as moot**.

**I. Background**

Plaintiff Douglas Kidd ("Plaintiff"), a person incarcerated at the Mount Olive Correctional Complex ("MOCC"), filed his complaint before this court alleging that Defendants Wexford Health Sources, Inc. ("Wexford"), Sandra May, Josh Shrewsbury, and unnamed employees (referred to as John/Jane Does) acted in "deliberate indifference" and thus were jointly responsible for his resulting harm. [ECF No. 1, at 2].

Plaintiff Douglass Kidd is an inmate at MOCC. Defendant Wexford is a health service business that contracted with the West Virginia Department of Corrections (WVDOC) to provide medical personnel and additional services. [ECF No. 42]. On May 15, 2015, he sustained an injury to his foot while attempting escape from Salem Correctional Center. [ECF No. 38]. Subsequently, on January 12, 2022, Plaintiff submitted a sick call request and requested a long-term care plan for his injury. *Id*. He was then examined by Dr. Charles Lye, a Wexford medical director who was dismissed from this action. [ECF No. 35]. *Id.* Upon Dr. Lye's examination, he discovered several issues with the Plaintiff's foot which, in his expert opinion, he believed required no orthopedic shoe. [ECF No. 37]. The Wexford collegial review committee agreed. *Id*. Plaintiff was subsequently denied his orthopedic footwear repeatedly after Defendant Josh Shrewsbury, a physician's assistant employed by Defendant Wexford, notified him of the restriction on footwear while he was incarcerated.

Plaintiff also alleges that Defendants were deliberately indifferent as to his hand injury which he sustained on February 25, 2022, when he got into a physical altercation with another inmate. [ECF No. 37]. This injury was only discovered after Plaintiff was sent to an orthopedic consult and an x-ray was performed by Sandra May, a physician's assistant employed by Defendant Wexford. [ECF No. 42]. On March 2, 2022, this x-ray revealed a fracture that was slightly misaligned, and Plaintiff was seen by a corresponding specialist on March 23, 2022. [ECF No. 42]. It was then that Plaintiff was evaluated at Charleston Area Medical Center, and a corrective surgery was performed on April 11, 2022. Subsequently, after continued complaints by the Plaintiff, he received additional follow-up care that included hospital visits, consultations, and

procedures. Plaintiff argues now that this treatment plan, and the delay between procedures, constitutes deliberate indifference in violation of his constitutional rights.

## II. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. A court "may grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in their favor." *Anderson*, 477 U.S. at 256.

Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of their case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The

nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. See *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

**III.    Discussion**

The Defendants allege they are entitled to summary judgement on Count I because there is no evidence that their actions rose to the level of deliberate indifference; Count II because there is no evidence that Plaintiff's constitutional rights were violated as a result of any official custom or policy of Wexford; and Counts III and IV because there is no evidence that their actions rose to the level of negligence or that Plaintiff was injured as a proximate result of same. [ECF No. 38]. In addition, Defendants request the court to strike Dr. McKinney as an expert witness and exclude him from testifying at trial, [ECF No. 39].[1] I will address these issues in turn.

**A.  Count I: Deliberate Indifference under the U.S Constitution as to 42 U.S.C. §1983**

The Defendants first argue that they are entitled to summary judgment on Count I because there is no evidence that their actions rose to a level of deliberate indifference in violation of 42 U.S.C. § 1983. [ECF No. 38]. As a preliminary matter, I first note, as Defendants articulate in their reply, that Plaintiff "is withdrawing or dismissing his claim against the corporate entity Wexford that is made pursuant to 42 U.S.C. §1983." [ECF No. 42, at 1]. However, they make no motion to do so, so the matter remains pending. After additional consideration by the court, the Motion for Summary Judgment on this count, as it relates to Defendant Wexford, is **GRANTED**.

---

[1] As to the issue of disclosure, Plaintiff has stated that he has no intention of calling additional providers, CAMC physicians, or other medical personnel.

Despite dismissing his earlier claim against Wexford, Plaintiff still maintains that relief is warranted under the same claims as to the remaining Defendants. Therefore, I find it appropriate also to adjudge the merits.

"In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on such a claim, a plaintiff must offer "proof that the medical need in question is objectively 'serious,' and that the defendant acted with subjective indifference, meaning he or she 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Adams v. Ferguson*, 884 F.3d 219, 227 (4th Cir. 2018) (alterations in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). Further, the subjective mental state required of a deliberately indifferent actor is "more than mere negligence." *Farmer*, 511 U.S. at 835. It is instead "somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (citing *Farmer*, 511 U.S. at 835). This means that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. "Under this standard, mere '[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional

5

circumstances." *Scinto v. Stansbury*, 841 F.3d 219, 226–27 (4th Cir. 2016) (alteration in original) (quoting *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)); *accord Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("Questions of medical judgment are not subject to judicial review.").

Plaintiff states that the actions of the Defendants in concert run afoul of his constitutional rights under the Eighth Amendment. [ECF No. 1, at 4]. Individually, he asserts that the Defendants demonstrated deliberate indifference as to both the injuries sustained in his foot and hand. In first addressing the injuries in his hand, Plaintiff recites the following facts:

> 1) On February 25, 2022, plaintiff fractured his hand and brought it to the attention of a Wexford Nurse.
> 2) Defendant Sandra May, the PA on site requested that an x-ray be taken.
> 3) On March 2, 2022, an x-ray confirmed the fracture that was slightly misaligned.
> 4) Sandra May, the PA did not get Mr. Kidd's case reviewed by the collegial until March 10, 2022; Defendant Shrewsbury participated in the collegial.
> 5) Mr. Kidd was not seen by a specialist until March 23, 2022.
> 6) Defendants May and Shrewsbury failed to follow the Wexford Guidelines regarding referrals for fractures, such as those suffered by Mr. Kidd.
> 7) Under the Wexford Guidelines, plaintiff's fracture was to be addressed as semi-emergent or urgent.
> 8) The Medical record from March 23, 2022, states Mr. Kidd's fracture would need to be rebroken as it had already begun to heal.
> 9) Mr. Kidd had the surgery on April 11, 2022 during which an osteotomy had to be performed.
> 10) Subsequent to the surgery, Mr. Kidd was directed to follow-up, but this did not occur in a timely manner, as directed by the specialist.

[ECF No. 42, 5-6].

The facts, and the Defendants' conduct, suggest that there is no genuine issue of material fact as to the seriousness of Plaintiff's hand injury. Rather, it is the "timing" of the care administered to the Plaintiff that is the primary issue at hand. Precedent regarding how long it takes for care to be administered to a person who is incarcerated, and if that delay constitutes deliberate indifference, has been addressed both in this district and the Fourth Circuit. *See Clark v. Proctor*,

6

No. 2:20-cv-00720, 2021 WL 5411948, at *3 (S.D. W. Va. Nov. 18, 2021) (finding that a delay in care for a person who is incarcerated amounted to mere negligence and did not arise to a level of criminal recklessness); *See also Cokely v. Townley*, 1991 U.S. App. LEXIS 1931, at*6 (4th Cir. 1991) (finding an unusual length of delay can constitute deliberate indifference). However, contrary to the Plaintiff's belief, delay in and of itself does not constitute deliberate indifference. Rather, delay may only constitute deliberate indifference if the gravity of the injury is apparent. *See Cooper v. Dyke,* 814 F.2d 941, 945 (4th Cir. 1987).

Plaintiff's injuries and the conduct of the Defendants here are a far cry from what has been established as deliberate indifference. Even taking the facts as they are alleged by the Plaintiff, it is evident that there was a care plan in place to assess Plaintiff's injuries. Further, this care plan administered by the remaining Defendants did not cause the Plaintiff to suffer the kind of irreparable disfigurement that permits relief. To the contrary, it appears in viewing the facts, that the actions of Sandra May or Josh Shrewsbury, acting in concert with the now dismissed prior Defendants, allowed for the Plaintiff to avoid serious injury. In Plaintiff's reply, he provides no evidence suggesting that the Defendants had the ability to expedite his care plan or took definitive steps to prolong it. As such I see no genuine issue of material fact pertaining to the claim of deliberate indifference for his hand fracture.

> The above reasoning extends to Plaintiff's foot injury. He states the facts are as follows:
>
> 1) Plaintiff has been complaining about the pain in his foot and need for an orthotic shoe for years. In this regard, Defendants' expert has recounted plaintiff's history accurately.
> 2) Plaintiff has filed numerous health service requests addressing this issue that are addressed by defendants' expert
> 3) Plaintiff has filed numerous grievances on this issue that are addressed by defendant's expert;
> 4) Defendants' own expert and records review refers to plaintiff's foot/ankle as a

7

> "mangled foot especially at the ankle."
> 5) Defendants' own expert even states that plaintiff should have a shoe and that the records indicate he has a mangled foot. The records also confirm that plaintiff received an orthotic shoe many years ago but that he is not currently authorized.

[ECF No. 42, at 10].

From the initial moment in which Plaintiff injured himself while attempting escape, he was provided treatment. Rather than the treatment itself, it is once again the delay in treatment (as well as the type of treatment administered) that is at issue with regard to Plaintiff's foot. Plaintiff suggests that the Defendants acted as "gate keepers" to the care he should have been provided. [ECF No. 42, at 11]. However, it is not care that Mr. Kidd was deprived of. It was his requested foot orthidic. This does not constitute deliberate indifference. As stated above, the subjective mental state required of a deliberately indifferent actor is "more than mere negligence." *Farmer*, 511 U.S. at 835. Mere disagreement is not equivalent to mere negligence. And even if that were so, meeting the standard for negligence is not enough to prevail. Further, I also acknowledge that even if the Defendants had elected to provide a foot orthotic, the current policy of the carceral facility he resides in would not allow him to wear it. I cannot find that any exceptional circumstances exist here to show the delay in treatment, disagreement in care, or care itself rises to the level of a constitutional violation. For these reasons summary judgment is proper as to Plaintiff's eighth amendment deliberate indifference claim against Defendants.

### B. Count II: Deliberate Indifference to a Serious Medical Need Through the Custom and Practice of Denying Outside Medical Treatment

Defendants next argue that they are entitled to summary judgment because there is no genuine issue of material fact as to whether Plaintiff's rights were violated as a result of an official policy or custom at Wexford.

"There is, however, no respondeat superior liability pursuant to 42 U.S.C. § 1983." *Berry v. Rubenstien*, No. 1:07-00535, 2008 WL 1899907, at *2 (S.D. W. Va. Apr. 25, 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Instead, "'[l]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights,' or where a subordinate acts pursuant to a policy or custom for which the supervisor is responsible." *Id.* (quoting *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977)). Though 42 U.S.C § 1983 claims are often directed at individuals, claims may be directed at corporations. *Taylor v. Wexford Health Sources, Incorporated*, 737 F.Supp.3d 357, 373 (S.D. W. Va. 2024). Since Wexford is a corporation, the Plaintiff must show that "the deprivation of rights resulted from application of an official policy or custom." *Id.*; *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999) (applying the principles of § 1983 to private corporations). A "policy or custom" in the context of deliberate indifference can be established several ways. The Court in *Lytle v. Doyle* outlined the plethora of options as follows:

> A policy or custom for which a [corporation] may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

326 F.3d 463, 471 (4th Cir. 2003)

Though the methods and tactics are numerous, Plaintiff fails to elaborate on how any of Wexford's policies, or the policies of the named Defendants, contributed to deliberate indifference. Throughout Plaintiff's complaint he emphasizes that he was "denied treatment." *See* [ECF No. 1]. This is false. As detailed above, regardless if it was through their individual capacity or in accordance with a custom or policy, Defendants provided treatment. In fact, contrary to the

Plaintiff's assertion, providing splints, x-rays, medication, follow up appointments, and physician referrals constitutes medical care. This is several steps removed from medical negligence and bounds away from deliberate indifference. In failing to mention any specific custom or policy in his Reply, Plaintiff fails to provide this court with any justification to suggest otherwise. Accordingly, summary judgment is proper as to Plaintiff's deliberate indifference through the custom and practice claim against Defendants.

### C. Count III and IV: Negligence and Vicarious Liability

The Defendants next argue they are entitled to summary judgment on Counts III and IV because there is no evidence that their actions rose to the level of negligence or that the Plaintiff was injured as a proximate result of same. I also note that the negligence claim, as stated in the Complaint, relies on the West Virginia Medical Professional Liability Act (WVMPLA).

Under the WVMPLA, to prove medical negligence a plaintiff must establish that: (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death. *Hicks v. Janiszewski*, No. 5:13CV140, 2014 WL 2778731, at *5 (N.D. W. Va. June 19, 2014) (citing W. Va. Code § 55–7B–3). Further, expert testimony is required if the medical negligence claim involves an assessment of whether the plaintiff was properly diagnosed and whether the health care provider was the proximate cause of the plaintiff's injuries. *Banfi v. Am. Hosp. for Rehab.*, 529 S.E.2d 600, 605–06 (W. Va. 2000).

In defense of his position, Plaintiff merely argues that expert testimony is not necessary at this stage because the medical negligence in this case is "so gross or obvious that an expert is

unnecessary." [ECF No. 42, at 12]. As I have already determined, this standard is difficult to meet. Rather than citing any case law in service of his position, Plaintiff merely states that "facts set forth in support of his claim for deliberate indifference clearly supports [his] claim of negligence". *Id*. This is far from sufficient. As noted above, and specified by statute, for a Plaintiff to prevail on a medical negligence claim they are required to offer proof that "an injury or death resulted from the failure of a health care provider to follow the accepted standard of care." W.Va. Code § 55-7B-3(a). In addition, to survive the summary judgment stage, more than a recitation of facts is necessary. *See Yoho v. SW. Energy Co.*, No. 5:23-cv-101, 2025 U.S. Dist. LEXIS 6244, at *5 (N.D. W. Va. Jan. 13, 2025) ("Once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with additional evidence demonstrating there is indeed a genuine issue for trial.") (internal citations omitted).

In his single paragraph in support of his negligence claim, Plaintiff fails to cite evidence much less demonstrate that there exists a genuine issue of material fact. Specifically, Plaintiff fails to state in his Reply demonstrating how the Defendants separately (or jointly) failed to exercise a high degree of skill. Further, even if this were so, the Plaintiff does not provide any briefing on how a lower standard of care provided is not akin to other similarly situated medical professionals. And even if he *had* done so, this detail would still fail to explain the gross deviation of care that would allow Plaintiff to plead a negligence claim under WVMPLA. Without further support, I both find it unnecessary to assess if these actions were the proximate cause of any given injury and cannot determine there is a genuine issue of material fact present. Given that I have not determined liability for the Defendants for negligence under the WVMPLA nor in the above instances, it is

not appropriate to determine any Defendant vicariously liable. Accordingly, summary judgment is proper as to Plaintiff's negligence and vicarious liability claims.

## IV. Conclusion

Accordingly, Defendants' Motion for Summary Judgment, [ECF No. 35], is **GRANTED**. Further, Defendants' Motion to Strike Plaintiff's Identified Expert Witnesses and Exclude Them from Testifying at Trial [ECF No. 39], is **DENIED as moot.** The court **ORDERS** that judgment be entered in favor of Defendants, and that this case be **DISMISSED** and **STRICKEN** from the docket of this court. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 21, 2025

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE